UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00169-GNS

NADIR MULAOSMANOVIC                                                              PLAINTIFF

v.

WARREN COUNTY, KENTUCKY, et al.                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 7). For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  BACKGROUND

Plaintiff Nadir Mulaosmanovic ("Plaintiff") brought this action against Warren County, Jackie Strode ("Strode"), and Stephen Harmon ("Harmon") (collectively "Defendants"), asserting that Defendants violated 42 U.S.C. § 1983 and Kentucky law. (Compl. ¶¶ 13-23, DN 1). At all times relevant to this litigation, Plaintiff was an inmate at the Warren County Regional Jail ("WCRJ"), and Strode and Harmon worked as jailers at that facility. (Compl. ¶ 2, 5, 7-8).

Though not altogether clear, the foundation of the Complaint appears to be that Defendants failed to hire and train qualified persons to work at the WCRJ, as evidenced by the fact that the facility's medical personnel provided Plaintiff with subpar treatment on October 12, 2016. (Compl. ¶ 6). Plaintiff claims that another inmate assaulted him on that date, and that the jailers at the WCRJ "failed to stop the assault," causing him to suffer serious injuries to the "left side of his face." (Compl. ¶¶ 9-10). Plaintiff avers that the WCRJ's unqualified medical staff then failed to treat his injuries and refused to permit him to undergo an x-ray at an outside

1

facility. (Compl. ¶ 12). As evidence of the medical staff's deficient treatment, Plaintiff notes that the Warren District Court permitted him to visit an emergency room on October 14, 2016. (Compl. ¶¶ 13-14). X-rays taken during that visit confirmed that Plaintiff had "fractures on [the] left side of his face," for which he underwent surgery. (Compl. ¶¶ 13-14, 16).

Plaintiff filed this action on October 13, 2017, asserting four claims against Defendants and one claim against an unnamed defendant. (*See* Compl. ¶¶ 13-23). Strode and Harmon are sued in both their official and individual capacities. (Compl. ¶ 6). Plaintiff claims that Defendants failed to hire qualified employees and train their employees, which constitute: (1) a violation of Section 1983 because the alleged misconduct infringes the Eighth Amendment's prohibition on cruel and unusual punishment; (2) negligence and gross negligence;[1] and (3) the tort of outrage. (Compl. ¶¶ 13-21). Plaintiff also charges that Defendants are liable for negligence per se, as aspects of the WCRJ's medical department do not comply with 501 KAR 3:090. (Compl. ¶¶ 22-23). Finally, Plaintiff asserts a medical malpractice claim against an unnamed nurse at WRCJ.[2] (Compl. ¶ 17).

Defendants have moved to dismiss all claims. (Defs.' Mem. Supp. Mot. Dismiss 1-12, DN 7-1 [hereinafter Defs.' Mot. Dismiss]). Defendants assert that the statute of limitations bars all of Plaintiff's claims except his claim of outrage. (Defs.' Mot. Dismiss 2-5). They also state as grounds for dismissal that: (1) Plaintiff's Section 1983 claim fails to state a claim on which relief can be granted, and (2) sovereign immunity bars Plaintiff's state law claims against Warren

---

[1] The Court interprets Plaintiff's negligence claim—which simply states that "Defendants were negligent"—as a claim that Defendants acted negligently when they failed to hire and train qualified personnel to work at the WCRJ. (*See* Compl. ¶¶ 6, 17).

[2] With respect to Plaintiff's purported medical malpractice claim, the allegation simply states that a "[n]urse at the Warren County Regional Jail failed to satisfy the standard of care applicable to the nursing profession." (Compl. ¶ 17). The parties treat this allegation as a medical malpractice claim in their filings, and the Court will address it as such. (*See, e.g.*, Pl.'s Resp. Mot. Dismiss 9-11, DN 10 [hereinafter Pl.'s Resp.]).

2

County, as well as the official-capacity state law claims against Strode and Harmon. (Defs.' Mot Dismiss 6-12). The parties have briefed the issues attendant to Defendants' motion, and it is ripe for adjudication.

## II.     JURISDICTION

This action arises under the laws of the United States, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A claim is implausible if an affirmative defense bars it. *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64); *Conner v. U.S. Dep't of the Army*, 6 F. Supp. 3d 717, 722 (W.D. Ky. 2014) ("[A] complaint that shows on its face that relief is barred by the affirmative defense of the statute of limitations is properly subject to a Rule 12(b)(6) motion to dismiss . . . ." (citation omitted)).

## IV. DISCUSSION

Defendants argue that the statute of limitations and the doctrine of sovereign immunity bar all of Plaintiff's claims. (Defs.' Mot. Dismiss 2-8). The Court will address each argument.

### A. Statute of Limitations

The limitations period for Section 1983 actions—as well as for negligence, negligence per se, and medical malpractice claims—is one-year based on Kentucky's personal injury statute of limitations. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (citation omitted); *Vannoy v. Milum*, 171 S.W.3d 745, 748 (Ky. 2005) (noting that medical malpractice actions are subject to a one-year limitations period); *see also* KRS 413.140(1)(a). Federal law "determines when [a Section 1983] cause of action" accrues, state law determines when a state law cause of action accrues, and state tolling laws apply to both inquiries. *See Perreault v. Hostetler*, 884 F.2d 267, 270 (6th Cir. 1989). Under both Kentucky and federal law, "the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim." *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citation omitted); *see also McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) ("A § 1983 claim for failure to train . . . begins to run when the facts that would support a cause of action are or should be apparent." (citation omitted)); *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 500 (Ky. 1979) (citation omitted).

The statute of limitations in this instance bars Plaintiff's Section 1983 claim, as well as the claims for negligence and medical malpractice. According to the Complaint, Defendants' failure to train the WCRJ's medical staff subjected Plaintiff to substandard medical care on October 12, 2016. (Compl. ¶ 7, 11). Plaintiff's medical malpractice claim accrued on that date because he then knew that a WCRJ nurse provided him with subpar treatment, as evidenced by

4

the fact that Plaintiff requested "a full medical observation and x-ray of his left side of his face and eye" immediately after visiting the nurse. (Compl. ¶ 12). Further, Plaintiff's Section 1983 and negligence claims accrued at that time because he knew then that he received poor medical treatment, on October 12, 2016, due to Defendants' failure to hire and train qualified personnel. *See McCarty*, 646 F.3d at 1289 (reasoning that plaintiff had facts necessary to support claim that defendant failed to train employees when the employees engaged in the underlying tortious conduct). Nonetheless, Plaintiff filed the Complaint on October 13, 2017—one day outside the limitations period. Therefore, Plaintiff's Section 1983 claim and claims for negligence and medical malpractice are time-barred.

The same result attaches to Plaintiff's negligence per se claim which is premised on Defendants' violation of 501 KAR 3:090.[3] (Compl. ¶ 23). Though the Complaint does not specify subsections of the regulation, the only provisions relating to Plaintiff's general allegations provide: (1) "[a]ll health care staff working in the jail shall comply with state licensure and certificate requirements"—i.e., be qualified for the job, and (2) "[i]f emergency care is needed, it shall be provided."[4] 501 KAR 3:090(4), (21). As noted above, Plaintiff knew that he needed emergency medical care—and experienced the effects of WCRJ's allegedly

---

[3] The Court has previously noted that a prison's violation of this regulation may not give rise to a private right of action. *Johnson v. Prison Health Servs., Inc.*, No. CIV.A. 3:06-CV-516H, 2009 WL 3856188, at *2 (W.D. Ky. Nov. 17, 2009). The Court will nonetheless analyze Plaintiff's negligence per se claim under the assumption that it is viable.

[4] Plaintiff explains in his briefing that he suspects that Defendants violated the regulations because they do not maintain a "daily medical log" and did not transfer Plaintiff so that he could resolve his medical issues. (Pl.'s Resp. 9). Whether Defendants violated 501 KAR 3:090(5) when they failed to keep a medical log is irrelevant to Plaintiff's negligence per se claim because Plaintiff has not alleged any injury caused by that purported failure. *See Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. App. 2004) ("As with common-law negligence, causation and injury must still be proved in negligence per se claims."). In addition, the regulations do not require jails to permit prisoners to transfer elsewhere due to their medical conditions.

5

unqualified medical staff—on October 12, 2016, the date that he received treatment and requested further treatment immediately thereafter. (Compl. ¶ 12).

Seeking to avoid this outcome, Plaintiff raises two arguments. First, he claims that he did not discover his injury until October 14, 2016—when the x-ray screening confirmed that he had "fractures on [the] left side of his face." (Compl. ¶¶ 13-14; Pl.'s Resp. 5-8). As discussed above, however, Plaintiff's own allegations refute that proposition. While Plaintiff may have discovered the *extent* of his facial injuries on October 14, his "lack of knowledge of the extent of [an] injury does not toll a statute of limitation . . . ." *See Louisville Tr. Co.*, 580 S.W.2d at 500. Second, Plaintiff asserts that the limitations period should be tolled until October 14, 2016 pursuant to Kentucky's "continuous course of treatment" doctrine. (Pl.'s Resp. 7-8). That doctrine "operates to toll the statute of limitations" in situations "where a patient[,] . . . knowing that the physician has rendered poor treatment, . . . continues treatment in an effort to allow the physician to correct any consequences of the poor treatment . . . ." *Harrison v. Valentini*, 184 S.W.3d 521, 525 (Ky. 2005). Plaintiff ceased treatment with the medical staff at WCRJ on October 12, 2016, and any subsequent treatment he received at an outside facility "cannot be imputed to [Defendants] for the purpose of applying the" doctrine. *Mullins v. Graber*, No. 2015-CA-000346-MR, 2016 WL 4098760, at *3 (Ky. App. July 29, 2016). Plaintiff's arguments therefore fail.

Plaintiff's Section 1983 claim and claims for negligence, negligence per se, and medical malpractice fall outside the one-year limitations period in KRS 413.140. The Court will

therefore dismiss these claims.[5] *Conner*, 6 F. Supp. 3d at 722 (noting that a complaint fails to state a claim if all claims contained within fall outside of the applicable limitations period).

### B. Sovereign Immunity

Defendants argue that Plaintiff's outrage claim is barred by the doctrine of sovereign immunity. The Kentucky Supreme Court has held that a county is a political subdivision of the Commonwealth protected by the same sovereign immunity as the state. *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (citation omitted). As a result, counties and county employees sued in their official capacity are immune from tort liability unless the General Assembly waives such immunity via statute. *Id.* (citations omitted); *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001) (noting that sovereign immunity "extends to public officials sued in their [official] capacities, when the state is the real party against which relief in such cases is sought" (citations omitted)).

Plaintiff counters that Defendants' immunity argument fails because Warren County may have "purchased insurance for coverage of the claims made in the lawsuit, [and] such purchase of insurance could act as a waiver of immunity from tort liability." (Pl.'s Resp. 13). In support of his contention, Plaintiff cites *Reyes v. Hardin County*, 55 S.W.3d 337 (Ky. 2001)—a case in

---

[5] Plaintiff's Section 1983 claim is also subject to dismissal because Plaintiff failed to adequately plead it. To properly present a "failure to" claim against Warren County, and against Strode and Harmon in their official capacities, Plaintiff must allege, *inter alia*, facts showing that inadequate training "was the result of [Defendants'] deliberate indifference . . . ." *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). Given that he has not alleged that Defendants "ignored a history of abuse," he has failed to meet this standard. *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Plaintiff must also present facts showing that Strode and Harmon were personally involved in the "underlying unconstitutional act" in order to state claims against them in their individual capacities, and he has failed to do so. *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 846 (E.D. Tenn. 2011).

which the Kentucky Supreme Court interpreted KRS 67.186[6] as expressly waiving counties' sovereign immunity from suits against county hospitals in some circumstances. *See id.* at 342.

Defendants are immune from Plaintiff's outrage claim. Given the narrow holding in *Reyes* and the fact that Kentucky courts have since explained that *Reyes* did not hold that a county's purchase of "insurance coverage alone constitute[s] a waiver of immunity," the Court must conclude that Defendants are immune from Plaintiff's claims—despite the fact that the county may have purchased insurance to cover such claims. *See Holbrook v. Perry Cty.*, No. 2003-CA-000119-MR, 2004 WL 1909344, at *1 (Ky. App. Aug. 27, 2004). Accordingly, Plaintiff's claim of outrage against Warren County and Strode and Harmon in their official capacities must be dismissed.[7] *See Oshop v. Tenn. Dep't of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *2 (M.D. Tenn. June 10, 2009) (explaining that Rule 12(b)(6) is an "appropriate mechanism[] to dismiss claims barred by . . . sovereign immunity").

Nonetheless, Plaintiff's claim of outrage against Strode and Harmon in their *individual capacities* is not subject to dismissal. Strode and Harmon are not entitled to sovereign immunity as to claims against them in their individual capacities.[8] *See Yanero*, 65 S.W.3d at 518 (noting that sovereign immunity "extends to public officials sued in their [official] [] capacities . . . ."). Neither Strode nor Harmon has asserted any other basis on which the Court might conclude that this claim should be dismissed. As a result, Plaintiff may proceed with discovery on his claims

---

[6] The statute at issue in *Reyes* is inapplicable to this action.
[7] Given this analysis, even if Plaintiff's negligence, negligence per se, and medical malpractice claims against Warren County and Strode and Harmon in their official capacities were *not* time-barred, sovereign immunity would bar those claims.
[8] Strode and Harmon appear to recognize this result in their briefing, as they specifically invoke sovereign immunity as a bar to Plaintiff's "claims against them in their ***official*** capacities." (Defs.' Reply Br. Supp. Mot. Dismiss 13, DN 12 (emphasis in original)).

of outrage against Strode and Harmon in their individual capacities, but all other claims are dismissed.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 7) is **GRANTED IN PART** and **DENIED IN PART**.

**Greg N. Stivers, Judge**
**United States District Court**
March 12, 2018

cc: counsel of record